IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:17-CV-103-WKW |
| FOUR FOUR, LLC, *et al.*, | ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:17-CV-104-WKW |
| FOUR FOUR, LLC, *et al.*, | ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MAIDEN INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:17-CV-765-WKW |
| FOUR FOUR, LLC, | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

In this consolidated action, Plaintiffs Associated Industries Insurance Company ("Associated"), United Specialty Insurance Company ("United"), and Maiden Insurance Company ("Maiden") seek a declaratory judgment that they do not owe a duty to defend or indemnify their insured, Defendant Four Four, LLC, in an underlying lawsuit in Alabama state court. (Doc. # 19.[1]) The individual Defendants — who are plaintiffs in the state court action against Four Four — move to dismiss or, in the alternative, stay the actions brought by Associated and United as unripe for adjudication.[2] (Doc. # 41.)

That motion will be granted in part and denied in part. While it is indeed premature to determine whether and to what extent the insurers must provide coverage if their insured is one day found liable, the question of the insurers' duty to defend is a live controversy properly before the court. Accordingly, the

---

[1] The CM/ECF document references are to the lead case, Case No. 2:17-CV-103-WKW.

[2] The individual Defendants have not been joined as parties in the third of the consolidated cases, *Maiden Specialty Insurance Co. v. Four Four, LLC*, Case No. 2:17-CV-765-WKW. The first two cases — those filed by Associated and United — were filed on February 21, 2017, and listed only Four Four as the defendant. The complaints were then amended on November 28, 2017, and November 17, 2017, respectively, to add the individual Defendants as necessary parties. Maiden filed its action on November 8, 2017, against Four Four only. The individual Defendants moved to dismiss or stay the Associated and United actions on December 21, 2017, and all three actions were consolidated on January 11, 2018. Thus, this order on the individual Defendants' motion to dismiss affects only the first two of the consolidated cases: *Associated Industries Co. v. Four Four, LLC., et al.*, Case No. 2:17-CV-103-WKW, and *United Specialty Insurance Co. v. Four Four, LLC, et al.*, Case No. 2:17-CV-104-WKW. Finally, Four Four has filed its Answer in all three actions and is not a party to the individual Defendants' motion to dismiss.

individual Defendants' motion to dismiss will be denied, and their motion to stay will be granted with respect to the duty to indemnify and denied with respect to the duty to defend.

## I. JURISDICTION AND VENUE

Plaintiffs call on the court to exercise jurisdiction pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. That Act does not itself confer jurisdiction upon the courts. "[A] suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989) (citing *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667 (1950)). Here, that source is diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs are citizens of Florida, Texas, and New Jersey; Defendant Four Four is a citizen of Alabama (*see* Doc. # 11); the individual Defendants are also citizens of Alabama; and the amount in controversy exceeds $75,000. The parties do not contest personal jurisdiction or venue.

Of course, diversity alone is not enough; as the DJA itself makes clear, jurisdiction is proper only if there exists an "actual controversy." 28 U.S.C. § 2201(a). As pertinent here, that requires the dispute to be ripe for adjudication. *See Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 505 (1972). The individual Defendants dispute that the litigation is ripe and move for dismissal pursuant to

Federal Rule of Civil Procedure 12(b)(1). (They also move for Rule 12(b)(6) dismissal, though that argument is based on lack of ripeness as well. (Doc. # 41, at 1–2.)) The question for the court is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

## II. BACKGROUND

For various periods of time between 2011 and 2015, each of the plaintiff insurance companies issued a commercial general liability insurance policy to a non-party company called Ballard Realty. In those policies, Ballard listed Defendant Four Four as an additional insured. Four Four was in the apartment business and owned the Eagle Landing Apartments in Montgomery, Alabama. In April 2016, residents of the complex sued Four Four in Alabama state court, claiming damages from mold, pest infestations, and various other conditions at Eagle Landing. That action is ongoing in the Circuit Court of Montgomery County. *See Addams, et al. v. CityR Eagle Landing, LLC, et al.*, Circuit Court of Montgomery County, No. 03-CV-2016-000202.00.

The individual Defendants here are some, though not all, of the plaintiffs there. (It depends whether they were residents of the complex during a period of

coverage by a plaintiff.) Four Four is a defendant in both actions. None of the insurance companies is a party to the state-court proceeding. They were notified of the suit on April 12, 2016, and within a month advised Ballard Realty and Four Four that they disputed coverage. They are providing Four Four with a defense pursuant to a reservation of rights. (Doc. # 19, at 14.)

Associated and United filed suit against Four Four in separate actions in federal court on February 21, 2017. Both sought declaratory judgments that they had "no duty to defend or indemnify Four Four from the allegations of the underlying complaint." (Doc. # 19, at 22.) They amended their complaints to include the individual Defendants on November 28, 2017 (Associated) and November 17, 2017 (United). Maiden filed its suit on November 8, 2017, and the three actions were consolidated on January 11, 2018.

Prior to amending their federal-court claims, but after initially filing suit, Associated and United moved to intervene in the state-court proceeding. (*See* Doc. # 67-1, at 26.) As they wrote there, they did so "for the limited purpose of participating in discovery and submitting special interrogatories and/or a special verdict form to the jury only after the jury has deliberated and returned a verdict in this case and only if the jury returns a verdict in favor of the Plaintiff[s] in this case against Defendant Four Four, LLC." (Doc. # 67-1, at 26.) The insurers clarified that they were not seeking a bifurcated trial proceeding, as allowed by the Alabama

5

Supreme Court in *Universal Underwriters Insurance Co. v. Anglen*, 574 So. 2d 716 (Ala. 1990) ("*Universal I*"), but were requesting the opportunity to participate in discovery and submit special interrogatories to the jury as needed. (Doc. # 67-1, at 31.)

The state-court plaintiffs opposed the intervention. They argued (1) that the issue of coverage and the issue of liability were wholly separate and should not be combined; (2) that the insurers had rejected the *Universal I* bifurcated trial alternative and should not be able to proceed under a different theory; and (3) that the insurers should be estopped from intervening because their declaratory judgment actions were pending in federal court.[3] (Doc. # 67-1, at 36–41.) The state court denied intervention.

The individual Defendants now move to dismiss the insurers' declaratory judgment actions.

## III. DISCUSSION

The individual Defendants make three arguments in their motion to dismiss. First and second, they assert that the court lacks subject-matter jurisdiction because the indemnification issue is unripe and the duty to defend issue is moot. And third,

---

[3] In the motion opposing intervention produced in the record, the state-court plaintiffs mentioned only the federal declaratory judgment action brought by United. However, the motion to intervene was filed jointly by United and Associated, and the two insurers also filed their federal declaratory judgment actions on the same day.

they contend that, even if the court does have jurisdiction, it should decline to exercise it. Each of these arguments will be addressed in turn.

**A.     Ripeness**

The individual Defendants' ripeness argument is straightforward: "[T]he duty to indemnify is not ripe for consideration until and unless the insured is found liable in the underlying suit." (Doc. # 41, at 3.) This is an unremarkable proposition that courts often accept, though it is not always clear whether they do so because of Article III's "case or controversy" requirement, for prudential reasons, or as an exercise of discretion under the DJA.[4] *See Edwards v. Sharkey*, 747 F.2d 684, 686–87 (11th Cir. 1984) (suggesting in dicta that the constitutional "case or controversy" requirement is met even in the absence of a judgment against the insured); *Emp'rs Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1210 (S.D. Ala. 2005) (holding that the "actual controversy" requirement of the DJA and the "case or controversy" requirement of the

---

[4] Part of the confusion comes because courts often speak in shorthand of "exercising jurisdiction" under the DJA, when really that statute is not a jurisdictional grant. Instead, as noted above, the DJA simply provides a discretionary *procedural* remedy, affording a remedial option in a case over which a court must have an independent basis for exercising jurisdiction. *See Skelly Oil Co.*, 339 U.S. at 671. But because ripeness is a factor to be considered in whether to grant that remedy, *see Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005), it is understandable that the discussion overlaps. To be clear, however, a Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction — *i.e.*, whether the court has the authority or competence to hear and decide the case based on Article III's "case or controversy" requirement and the existence of a valid federal statutory grant — and that is the kind of ripeness discussed in this section. Ripeness considerations with regard to whether the court will choose to provide a remedy under the DJA — the subject of the individual Defendants' Rule 12(b)(6) motion — are discussed below.

Constitution are met even absent a judgment against the insured). The court need not weigh in on the issue, however, because what *is* clear is that the jurisdictional ripeness requirements are met when an insurer seeks a declaratory judgment regarding both its duty to indemnify and its duty to defend, regardless of whether there exists an underlying judgment against the insured. *See Md. Cas. Co.*, 312 U.S. at 273–74; *see generally* 10B Charles Alan Wright & Arthur R. Miller *et al.*, *Federal Practice and Procedure* § 2760 (4th ed. 2018). Because that is the case here, so long as the insurers' duty to defend is not moot (a question taken up next), an "actual controversy" exists and jurisdiction is allowed.

**B.      Mootness**

Perhaps sensing the above outcome, the individual Defendants contend that "[t]he issue of [the insurers'] duty to defend is largely moot as [they] [are] already providing a defense to Four Four." (Doc. # 41, at 6.) But "largely moot" does not "actually moot" equal. Nor do the individual Defendants explain why their argument holds water when the underlying lawsuit is still going on and the insurers are only providing a defense pursuant to a reservation of rights. Instead, courts have long recognized that a controversy exists when an insured seeks a defense but the insurer denies that it is obligated to provide one. *See Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 270 F.2d 453, 461 (5th Cir.

8

1960).[5] In short, "[t]he defendants have not explained (and the [c]ourt cannot) their odd position that an insurer with the power and the desire to cease providing a defense fails to present an actual controversy when it seeks a declaration that it owes no duty to defend." *Accident Ins. Co. v. Greg Kennedy Builder, Inc.*, 159 F. Supp. 3d 1285, 1289 n.4 (S.D. Ala. 2016).

C.  **Abstention**

Under the DJA, simply because an actual, ripe, non-moot controversy exists does not mean that the court must resolve it. Rather, the DJA is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted). Accordingly, the Supreme Court has explained that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Eleventh Circuit has also established a series of guideposts to help courts balance state and federal interests when determining whether to keep or punt an action brought under the DJA. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).

---

[5] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Before turning to those guideposts, however, it is worth pausing on the threshold issue identified by the Supreme Court in *Brillhart*: whether the "state court [suit] present[s] the same issues, not governed by federal law, between the same parties." 316 U.S. at 495. Generally speaking, when this situation occurs, the two proceedings are considered "parallel." Parallel proceedings are in contrast to those that are merely related — *i.e.*, those that might involve some of the same parties, issues, or facts, but which nevertheless do not substantially overlap. So, for instance, when an insurer brings a declaratory judgment action against its insured, there are not parallel proceedings if "(1) the insurer was not a party to the suit pending in state court; and (2) the state court actions involved issues regarding the insured's liability, whereas the federal suit involved matters of insurance coverage." *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1006 (8th Cir. 2006) (citation omitted).[6]

That is precisely the case here. The plaintiff insurance companies are not parties to the underlying action — though they did attempt, unsuccessfully, to intervene in that action — and the state-court proceeding concerns the liability of

---

[6] There are many ways to define parallel proceedings, and, as the Third Circuit recently recognized, it is possible that "[s]trict identity between parties and claims is not necessary for pending proceedings to be substantially similar [or parallel], although that will be the most usual circumstance in which a court finds parallel proceedings to exist." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 n.8 (3rd Cir. 2017). At root, though, it means that "the parties involved are closely related and that the resolution of an issue in one [proceeding] will necessarily settle the matter in the other." *Id.*; *see Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (characterizing parallel proceedings for purposes of *Colorado River* abstention as "involv[ing] substantially the same parties and substantially the same issues").

the insured, not whether the insurer must provide coverage. Indeed, the state-court plaintiffs opposed the insurers' motion to intervene in state court just for this reason: They recognized that "[t]he issues are vastly different in the damage suit and in the coverage question dispute." (Doc. # 67-1, at 37.) As they wrote in their state-court brief, "[t]he Plaintiffs' Complaint in this case seeks damages from the five named defendants under the legal claims set out in the 7-Count Complaint. All are basically tort claims. In contrast, the coverage question between United and Associated and [their] insureds Four Four and Ballard Realty concern the terms and conditions of an *insurance contract* between those two carriers (United and Associated) and the insureds (Four Four and Ballard Realty). The issues are vastly different in the damage suit and in the coverage question dispute." (Doc. # 67-1, at 37.)

Having successfully fended off the insurers' request to intervene in state court, the individual Defendants now seek to bar them from pursuing relief in federal court. (This despite the fact that the state-court plaintiffs argued that the insurers should be estopped from intervening because they had "already determined that the federal court declaratory judgment action will adequately address [their] coverage issues." (Doc. # 67-1, at 41.)) According to the individual Defendants, because the Alabama Supreme Court has established a procedure by which an insurer challenging coverage can request a bifurcated trial

in the event its insured is found liable, it follows that the insurance companies here should have followed that procedure in state court. (Doc. # 67, at 5–6.) After all, they reason, "[h]ad the Plaintiffs properly intervened in the damage suit, under *Universal I*, this declaratory judgment action and the state court action *would be parallel proceedings*." (Doc. # 67, at 5; *see also* Doc. # 67-1, at 40 (relying on *Universal I* to oppose insurers' intervention in state court).)

To be sure, Plaintiffs in this suit could have sought to proceed in state court under *Universal I*. And if they had done so, and if the state court had granted their request — for the Alabama Supreme Court has made clear that "a bifurcated trial is not a matter of right for the insurer," *Universal I*, 574 So. 2d at 723–24 — then that action and this one would have been largely parallel. (Notably, the question of whether the insurers have a duty to defend would not have been answered in state court and would have become "actually moot.")

But the individual Defendants do not explain how exploring this hypothetical world of what-could-have-been decides the case as actually presented to the court. Surely their reasoning could apply to *any* declaratory judgment action with which the court is confronted: If only the insurer had first filed its claim in state court, and if only the state court had agreed to hear it, then "this declaratory judgment action and the state court action *would be parallel proceedings*." While the availability of alternative remedies is certainly a factor the court may consider,

12

nothing in the DJA countenances the individual Defendants' implied suggestion that it should serve as the sole criterion — despite how attractive that idea may be to a court with a crowded docket. *See Ameritas Variable Life Ins. Co.*, 411 F.3d at 1331.

More pertinent is the question of what to do given that Plaintiffs did *not* successfully intervene in the underlying damage suit and given that that suit will *not* necessarily resolve any of the issues the insurers seek to have answered here. Although other courts have suggested that the Eleventh Circuit has created a *per se* rule that the absence of parallel proceedings removes a court's discretion to dismiss a DJA action, *see Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 393 (5th Cir. 2003), the Eleventh Circuit itself has disclaimed this idea. *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016). Instead, it has explained that "nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues. Rather, the district court must weigh all relevant factors in this case, even though the state and federal actions [are] not parallel." *Id.*[7]

---

[7] Eleventh Circuit Rule 36-2 provides that "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." Suffice it to say, the court is persuaded by the reasoning in *First Mercury Insurance Company*, especially since its conclusion accords with those of the majority of other circuits that have considered the issue. *See, e.g.*, *Kelly*, 868 F.3d at 288; *Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010); *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 999 (8th Cir. 2005); *Sherwin-Williams*

13

Those factors were provided by the Eleventh Circuit in *Ameritas Variable Life Insurance Co.*:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;
> (7) whether the underlying factual issues are important to an informed resolution of the case;
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

411 F.3d at 1331.

The court is persuaded that the bulk of these factors favors exercising jurisdiction in this case. To paraphrase only slightly from a similar case in the Southern District, the relevant *Ameritas* guideposts play out as follows: (i) Alabama does not have a strong interest in adjudicating the insurers' duty to

---

*Co.*, 343 F.3d at 394; *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998).

defend in state court, as evidenced by the state court's denial of their request for leave to intervene in the state-court litigation for that very purpose; (ii) this declaratory judgment action would be of tremendous value in clarifying legal relations among the parties, by resolving the parties' disagreement as to whether the insurers do or do not owe their insured a defense in the state-court suit; (iii) there is no indication that the insurance companies engaged in "procedural fencing" by bringing this federal action, especially where they unsuccessfully sought to intervene in the state-court litigation; (iv) for the court to decide the insurers' duty to defend would neither increase friction between federal and state courts nor encroach on state-court turf, given that the court would be deciding an ancillary issue to the state-court litigation that the Circuit Court of Montgomery County expressly declined to hear; (v) there is no reason to believe that the insurers have better, more effective alternative remedies available to them as to the duty to defend; (vi) the underlying facts are likely of little importance to resolution of the duty to defend, which generally turns on the allegations of the complaint rather than specific factual determinations; and (vii) the state court cannot be in a better position than this court to decide the duty to defend, given that the state court has already denied the insurers' motion to intervene in that forum.[8] *See Pa. Nat'l Mut.*

---

[8] The individual Defendants object to the resolution of this last factor by pointing out that, had the insurers intervened in state court under the *Universal I* procedure, "[t]here would be no issues in phase two of the bifurcated trial which would be governed by federal law." (Doc.

*Cas. Ins. Co. v. King*, No. 11-CV-0577-WS-C, 2012 WL 280656, at *4 (S.D. Ala. Jan. 30, 2012).

So it goes for the duty to defend. But what of the duty to indemnify? The insurers argue that "there is no blanket rule that the duty to indemnify always has to await the outcome of the trial of the underlying case," and that it instead "depends upon the facts of the case and the coverage defenses being asserted." (Doc. # 66, at 5 (collecting cases).) This may be true, but it is too early to tell on which side of the rule this case falls. And anyway, it is a question to which there need not be an answer right now. Because the duty to defend is indeed more extensive than the duty to indemnify, *see Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005), it may very well be that determining the first issue will resolve the second if no duty to defend is found. Or, "[i]f the court determines that there is a duty to defend, it may well be appropriate not to then reach the further issue of duty to indemnify." *Emp'rs Mut. Cas. Co. v. Evans*, 76 F. Supp. 2d 1257, 1262 (N.D. Ala. 1999). But those are

---

# 67, at 9.) In contrast, they say, "Associated, United, and Maiden seek to apply federal law, not state law, on the issue of duty to defend as dispositive of the duty to indemnify. This factor would give an advantage to Associated, United, and Maiden in the federal forum, not available in the state forum." (Doc. # 67, at 9 (citing Doc. # 66, at 9).) But while the insurers did cite federal cases for the proposition that, "if there is no duty to defend, there is also no duty to indemnify" (Doc. # 66, at 9), it is significant that those federal cases *were applying state law*. Indeed, the insurers made that point explicit in the passage they quoted from a federal district court opinion: "*Under Alabama law*, the duty to defend is more expansive than the duty to indemnify." (Doc. # 66, at 9 (emphasis added) (quoting *Evanston Ins. Co. v. Lett*, No. 11-CV-0383-WS-C, 2012 WL 4927958, at *5 (S.D. Ala. Oct. 15, 2012).) In short, there is no disagreement that state law governs the insurers' duty to defend and indemnify.

questions for another day. For now it is enough to find that "[b]oth discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined." *Id.* At that time the parties will be free to make any motions they like concerning the indemnity question.

## IV. CONCLUSION

Accordingly, it is ORDERED as follows:

(1) The individual Defendants' motion to dismiss or, in the alternative, motion to stay (Doc. # 41) is DENIED in part and GRANTED in part, in that Plaintiffs' declaratory judgment action will proceed on their duty-to-defend claims, but will be stayed on their duty-to-indemnify claims.

(2) Plaintiffs' duty-to-indemnify claims are STAYED until the earlier of (a) final disposition of the underlying state-court litigation or (b) a ruling on the duty to defend, at which time the court will entertain motions concerning the coverage claims.

(3) The individual Defendants shall file an answer to Plaintiffs' Amended Complaint (Doc. # 19) **on or before June 26, 2018**.

(4) This Order affects only the first two of the consolidated cases (those filed by Associated and United) because the individual Defendants have not been made parties to the third (that filed by Maiden).

DONE this 12th day of June, 2018.

                                /s/ W. Keith Watkins
                 CHIEF UNITED STATES DISTRICT JUDGE